UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RISA BILAK -THOMPSON,

        Plaintiff,

v.                                       Case No. 05-CV-73195
                                         Judge Avern Cohn

DOLLAR TREE STORES, INC.,

        Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

### I. Introduction

This is an employment discrimination case under Michigan's Elliot Larsen Civil Rights Act, M.C.L. § 37.2101-37.2804 (ERCLA). Plaintiff Risa Bilak-Thompson (Bilak- Thompson), a female, worked as a store manager in a store owned by defendant, Dollar Tree Stores, Inc. (Dollar Tree).[2] Bilak-Thompson claims that she was discriminated against by her supervisors for being pregnant. Specifically, Bilak-Thompson says that because of her pregnancy she was falsely accused and terminated for falsifying payroll records. Before the Court is Dollar Tree's motion for summary judgment. Dollar Tree says that it legitimately terminated Bilak-Thompson for editing the time cards of Dollar Tree employees in violation of company policy. Moreover, Dollar

---

[1] Dollar Tree filed a motion to dismiss on May 8, 2006, based on Bilak-Thompson's alleged refusal to cooperate in setting up a deposition. This issue is now moot; the deposition took place on May 15, 2006.

[2] Defendant is an out-of-state corporation doing business in Michigan.

Tree asserts that Bilak-Thompson cannot establish a prima facie case of discrimination because she has offered no evidence that she was treated differently than a similarly situated person or that her termination has a disparate impact on a protected class. For the reasons that follow, Dollar Tree's motion for summary judgment will be granted.

## II. Background

Dollar Tree hired Bilak-Thompson in September, 1998. She managed store number 1833 in Dearborn, Michigan, from March, 2001, until her termination on December 22, 2004. Bilak-Thompson's direct supervisor from March 2001 forward was district manager Cheri Noble (Noble). During her approximately six years of employment with Dollar Tree, Bilak-Thompson received satisfactory or above-satisfactory reviews, and a number of promotions.[3]

Sometime in October, 2004, Bilak-Thompson informed Noble that she was pregnant.[4] In November, 2004, Noble says that she suspected Bilak-Thompson of making unauthorized edits to store employees' time cards in violation of company policy. Following an investigation of Bilak-Thompson's payroll editing for store employees over a

---

[3] Ironically, in Bilak-Thompson's "Management Performance Evaluation," dated June 18, 2004, Noble rated Bilak-Thompson's management of "payroll control" as exceeding Dollar Tree's expectations.

[4] Bilak-Thompson says that she verbally informed Noble of her pregnancy and gave her a doctor's note stating that she was pregnant on October 14, 2004. The letter is not in the record. Dollar Tree however, included in its exhibits a letter from Bilak-Thompson's doctor dated October 25, 2004, which states that Bilak-Thompson was pregnant. The letter also states that the doctor diagnosed her with "chronic low back pain with bilateral sciatica", and advised that she take off work until June 1, 2005.

two week period, Bilak-Thompson was terminated.

### a. Dollar Tree's Payroll Policies

Dollar Tree store managers are responsible for monitoring, correcting, and ultimately approving the weekly time cards of subordinate store employees. Dollar Tree uses a computerized Point of Sale (POS) system to record the hours each employee works. Employees are responsible for clocking in and out of shifts, breaks, and lunches. However, when an employee forgets to use the computerized system, he or she is expected to fill out a paper "time worksheet" to record the correct hours worked on that day. The time worksheets are to be signed by the employee who needs to correct an error in the POS system. The worksheet must subsequently be approved and signed by the store manager, who then edits the electronic time cards in the POS system. The weekly payroll must be finalized by 9:30 a.m. each Monday morning.

Dollar Tree says that it emphasized to both its managers and store employees the importance of using the POS system, and of documenting and correcting all time errors using the time worksheets by stating the policy in its work manuals, during meetings, and by posting flyers and placards in its stores. Noble says she specifically met with Bilak-Thompson to review the payroll policy on November 3, 2004, because Bilak-Thompson had a continuing issue with failing to collect time worksheets from employees before making time card edits in the POS system.

### b. The Investigation and Termination of Bilak-Thompson

On November 8, 2004, Noble delivered merchandise to Bilak-Thompson's store and asked one of the store employees to help her unload a van. Noble says that when she reviewed the payroll for that week she noticed that the employee who helped her

3

unload the van had not been paid for his work on that day. Noble discovered that despite being scheduled to work on November 8th and on other days during that week, the employee was not paid for any time at all that week. Noble says that no time worksheet(s) had been filled out to explain the discrepancies between the schedule and the employee's final time card.

Noble contacted Dollar Tree's compliance manager, Patricia Doss (Doss), who performed an audit of Bilak-Thompson's store payroll for the weeks ending on November 13th and November 20th, 2004. Doss reported to Noble that the audit revealed several "irregularities and anomalies" in the payroll edits for the weeks. In particular, Doss noted that on several occasions Bilak-Thompson edited out hours that employees had manually punched into the POS system. These edits allegedly resulted in employees not being paid for 46.55 hours worked. After reviewing the audit, Noble concluded that Bilak-Thompson had made the edits of employee time cards without documenting and obtaining employee authorization through the time worksheets. Noble then approached her superiors, regional human resources manager Mike Lorenz and regional training manager Darla Brooks, with the results of her personal review and Doss' audit of the store's payroll. She requested that she be allowed to terminate Bilak-Thompson. Lorenz and Brooks approved her request and Noble terminated Bilak-Thompson on December 22, 2004, for falsifying payroll records.[5]

---

[5] After the August 30, 2006, hearing, Bilak-Thompson sent interrogatories to Dollar Tree inquiring as to which person(s) were involved in the decision to terminate Bilak-Thompson. The interrogatory answers indicate that Noble instigated the investigation of Bilak-Thompson and recommended her termination. Doss was not involved in the decision to terminate Bilak-Thompson.

Bilak-Thompson denies that she improperly edited the employee time cards at issue. Instead she explains that the discrepancies between the employees' time schedules in the POS system and the actual time paid to the employees whose cards had allegedly been edited is due to the fact that those employees had been fired, suspended, or had called off. With regard to the employee that helped Noble unload the van, Bilak-Thompson says that she had suspended him for a dress code violation when he arrived at work. The employee however, remained in the store to wait for a ride and was not working when he helped Noble unload the van. Further, Bilak-Thompson says that none of the employees that Dollar Tree says were not paid ever complained about not being paid.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must

present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

## IV. Analysis

Bilak-Thompson's claim arises under ELCRA, M.C.L. § 37.2202, which states in relevant part that:

> 1. An employer shall not:
> (a) fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of ... sex.
> (b) limit, segregate, or classify an employee or an applicant in any way which deprives or intends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of ... sex.

Section 37.2201(d) states that, " 'sex' includes, but is not limited to pregnancy, childbirth, or a medical condition related to pregnancy or childbirth...."

Michigan courts have recognized two ways of establishing a prima facie case of employment discrimination -- by either showing intentional discrimination through direct evidence, or by showing discrimination through circumstantial evidence, and employing the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), used in cases alleging discrimination under Title VII.[6]  Bilak- Thompson says that she has made out a prima facie case using circumstantial evidence.

### A. Circumstantial Evidence of Discrimination

To establish a prima facie case of discrimination, McDonnell Douglas requires a plaintiff to establish that following four elements:

   1) Plaintiff belongs to a protected class;
   2) Plaintiff suffered an adverse employment action;
   3) Plaintiff was qualified for the position; and
   4) The job was given to another person under circumstances giving rise to an inference of unlawful discrimination.

The McDonnell Douglas test was originally applied in a race-discrimination case, and has been applied to other protected categories by tailoring the prima facie case to "fit the particular factual situation at hand."  Sniecinski v. Blue Cross & Blue Shield of Michigan, 469 Mich. 124, 132 (2003).

Where a plaintiff establishes a prima facie case, a presumption of unlawful discrimination arises.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The defendant, however, can rebut the presumption by producing evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason." McDonnell Douglas, 411 U.S. at 802.  Moreover, "the defendant need not persuade the

---

[6] See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1311-12 (6th Cir. 1989).

court that it was actually motivated by the proffered reasons." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993) (citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

Where the defendant rebuts the presumption, the plaintiff then must show that the defendant's reasons were a pretext for discrimination. See Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1166 (6th Cir. 1996). Plaintiff's burden is satisfied when plaintiff offers proof that the defendant's reason "is unworthy of credence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 134 (2000). Plaintiff need not show that the real reason was discrimination. See id.

### 1. Whether Bilak-Thompson has Established a Prima Facie Case of Pregnancy Discrimination.

#### a. The Parties' Arguments

The parties dispute the correct application of the McDonnell Douglas test under the circumstances here. While they agree that Bilak-Thompson has shown the first three elements of a prima facie case, Dollar Tree argues that Bilak-Thompson may not use the replacement theory in a pregnancy discrimination case. Bilak-Thompson, on the other hand, asserts that she has made out a prima facie by showing the following elements:

(1) she was a member of a protected class – pregnant women;
(2) she suffered an adverse employment action;
(3) she was qualified for the position, and
(4) the plaintiff was replaced by an individual who was not a member of the protected class -- a nonpregnant female[7]

---

[7] Bikal-Thompson relies on the following age discrimination cases to establish her claim: Meagher v. Wayne State Univ., 222 Mich.App. 700, 711 (1997); Lytle v. Malady (on Rehearing), 458 Mich. 153, 177-178 (1998) (opinion of Weaver, J.); Brocklehurst v. PPG Industries, Inc., 123 F.3d 890, 895 (6th Cir. 1997). She additionally cites to the

8

Bilak-Thompson says she was replaced by Nicole Pates, a female, who was working as an assistant manager at a different Dollar Tree store. She says that Pates had been on maternity leave several months before the transfer, but was not pregnant when she took over Bilak-Thompson's position.[8]

Dollar Tree argues that Michigan does not recognize the replacement theory in sex-discrimination suits. Therefore, Bilak-Thompson must satisfy the fourth element of the prima facie case by showing that she either suffered disparate treatment or that her termination resulted in a disparate impact to a protected class.

Alternatively, Dollar Tree argues that even if the Court allows Bilak-Thompson to proceed under a replacement theory, she still fails to make out a prima facie case of pregnancy-discrimination because she has applied the incorrect level of analysis. Bilak-Thompson says that she was replaced by a nonpregnant female. Dollar Tree argues that "pregnant females" are not a protected class. Instead, pregnancy is merely a subset of sex. Therefore, the protected class consists of <u>all</u> females, not just pregnant females. Since Bilak-Thompson argues that she was replaced by a nonpregnant female (who is also a member of the protected class), and not a male, she fails to make out a out a prima facie case.

---

unreported case, Miller v. Matrix Automotive Finishes, Inc., 2006 WL 1479559 (Mich. App.).

[8] At the August 30, 2006, hearing, the Court allowed Bilak-Thompson to supplement the record by providing evidence to support her claim that she was replaced by a nonpregnant female. Bilak-Thompson proffers the affidavit of Karly Rosen, who states that she worked with Bilak-Thompson prior to her termination; that Bilak-Thompson was replaced by Nicole Pates; and that Pates was not pregnant.

### b. Resolution

A plaintiff may use the replacement theory to satisfy the fourth element of a prima facie sex-discrimination case. See e.g., Feick v. Monroe Co., 229 Mich. App. 335, 338 (1998)(plaintiff allowed to proceed with age and gender discrimination claim under replacement theory where plaintiff established that she was replaced by a younger male); Smith v. Goodwill Indust. of W. Mich., Inc., 243 Mich.App. 438 (2001)(discussed below); Mock v, United Parcel Service, Inc., 2005 WL 3107731 at *5 (W.D. Mich.)(male plaintiff not allowed to proceed with reverse gender discrimination suit where he was not replaced by a female, and could not show that he was treated differently than a similarly situated female).

In Smith the Michigan Court of Appeals addressed the applicability of the replacement theory where a female plaintiff claimed pregnancy discrimination on grounds that she was replaced by a nonpregnant female. In Smith, the trial court determined that because "it was uncontroverted that the female plaintiff in this action was replaced by a woman, plaintiff has failed to create a material issue of fact as to the fourth element of the prima facie case." 243 Mich. App. at 447. On review, the court of appeals explained that if plaintiff's only argument had been that she was replaced for discriminatory reasons, the trial court's ruling would have been appropriate. Id. (citing Feick 229 Mich. App. 335). However, the court of appeals found that the trial court erred in granting summary judgment to the defendant because it failed to consider plaintiff's second theory that she had also been treated differently than a similarly situated male. Id.

Bilak-Thompson argues that she can use the replacement theory to establish a prima facie case because in Miller v. Matrix System, 2006 WL 1479559 at *3 (Mich. App.), the plaintiff proceeded with her sex discrimination claim under the theory that she had been replaced by a nonpregnant female.  In Miller the Michigan Court of Appeals analyzed the plaintiff's claim under the replacement theory and held that summary judgment in favor of the employer was appropriate because the plaintiff had not been "replaced"[9], and therefore had failed to establish a prima facie case of discrimination.

The Court believes that the Miller court misapplied the replacement theory in analyzing the facts.  The Miller court cites to Smith as the basis for the replacement test. 2006 WL 1479559 at * 2.  However, as discussed above, the court in Smith specifically ruled that summary judgment is appropriate where the only theory that a female plaintiff presents in a pregnancy discrimination claim is that she was replaced by a nonpregnant female.  Smith makes clear that, as Dollar Tree points out, "pregnant women" have not been recognized as a distinct class, separate from all women.  Accordingly, the relevant question has been whether a pregnant female has been replaced by a male.

The Miller court does not explain whether or how its decision effects prior case law which did not allow plaintiffs to proceed with a sex discrimination suit under the theory that a the plaintiff is replaced by a person of the same gender.  Thus, until Michigan state courts provide further guidance,  the Court declines to follow Miller which is inconsistent with Smith, Feick, and Mock.

---

[9] Instead, the Miller court found that the employer had merely created a new position.

Moreover, even if the Court were to agree with Bilak-Thompson that the Miller decision expands the possible theories that a plaintiff may proceed under to establish a prima facie case of sex discrimination, summary judgment would still be appropriate in this matter. As discussed below, Dollar Tree has rebutted the presumption of unlawful discrimination by offering a legitimate reason for terminating Bilak-Thompson, and Bilak-Thompson has failed to demonstrate that this reason was pretextual.

**2. Dollar Tree has Rebutted the Presumption of Unlawful Discrimination**

An employer can rebut a presumption of unlawful discrimination by producing evidence that the adverse action was taken "for a legitimate, nondiscriminatory reason." McDonnell Douglas, 411 U.S. 802. Here, Dollar Tree states that Bilak-Thompson had ongoing problems following its payroll policy regarding the editing of time cards through the POS system. Noble states that in early November of 2004, she met with Bilak-Thompson to specifically address the problem of her not presenting signed time-worksheets when making payroll edits in the POS system. Moreover, Noble says that she personally observed an employee at Bilak-Thompson's store unload merchandise for a few hours and later discovered that the employee was never paid for that work. This discovery led to a more extensive investigation and an audit by Doss. The audit revealed that Bilak-Thompson had on several occasions over a two week period, edited the entry or exit time of employees, without first obtaining a time-sheet signed by the affected employee. Noble says that she concluded that Bilak-Thompson had made unauthorized edits, and with the approval of her superiors she terminated Bilak-Thompson for falsifying payroll records. Based on this evidence, the Court finds that Dollar Tree has rebutted the presumption of unlawful discrimination.

### 3. Bilak-Thompson has Failed to Demonstrate that Dollar Tree's Reason for Terminating Her was Pretextual

Next, Bilak-Thompson has not shown that Dollar Tree's reason for terminating her was a "mere pretext" for discrimination.  See Thurman v. Yellow Freight Systems, Inc., 90 F. 3d 1160, 1166 (6th Cir. 1996).  When there is no direct evidence of discrimination, a plaintiff may establish pretext indirectly "by showing that the employer's proffered explanation is unworthy of credence."  Cline v.Catholic Dioces of Toldeo, 206 F.3d 651, 667 (6th Cir. 2000) (quoting Texas Dept, of Community Affairs v, Burdine, 450 U.S. 248, 256 (1981)).  To do so, the plaintiff is required to show by a preponderance of the evidence that (1) the reasons have no basis in fact, (2) if the reasons have a basis in fact, they were not actual factors motivating the decision, or (3) if the reasons were motivating facts, by showing that they were jointly insufficient to justify the decision. Meagher v. Wayne State Univ. 222 Mich. App. 700, 712 (1997).  Bilak-Thompson relies on the first method of showing pretext as she contends that she did not falsify payroll documents.

Bilak-Thompson supports her claim of pretext by providing the affidavits of two of the employees Dollar Tree alleges had their time card edited by Bilak-Thompson without their authorization.  The two employees state that they were paid for all the hours they actually worked over the two weeks that were investigated by Noble and Doss.  Bilak-Thompson further points out that she had recently received a positive review in June, 2004.  She told Noble she was pregnant in October, 2004, and within one month Noble launched the investigation and requested the audit of her alleged timecard editing.  Bilak-Thompson says that the short time period between when Noble learned of her

13

pregnancy and when she started the investigation is indicative of Noble's discriminatory intent. Moreover, Bilak-Thompson points out that it was Noble who recommended that she be terminated to her superiors.[10] Finally Bilak-Thompson says that her termination is suspect because neither Noble nor Noble's superiors asked her or the allegedly affected employees directly about the discrepancies in the time cards.

Bilak-Thompson's arguments are without merit. First, Bilak-Thompson does not dispute that she failed to follow company policy requiring her to correct timekeeping errors on a daily basis.[11] This failure left Bilak-Thompson in the position of sometimes having to circumvent Dollar Tree's policy of obtaining an authorized time-worksheet from an employee in order to finalize payroll by the Monday due date. For example, at her deposition, Bilak Thompson answered the question, "If an employee did not clock in or out ... how would that problem be fixed?," by stating that:

> [Employees] were supposed to fill out a time clock worksheet, but inevitably if they did not fill one out and the error had to be corrected, if no one else corrected it, come Monday morning when I had to finalize payroll by 9:30 or

---

[10] Bilak-Thomspon argues that even if it was someone other than Noble who was approved the termination, and that this person had no knowledge of her pregnancy, that fact alone does not negate the causal link. She says this is a situation in which the prejudicial motive of one employee (here, Noble) can be imputed to the employer. The bias of a supervisor who was not the ultimate decision-maker can be imputed to the employer. In EEOC v. International House of Pancakes, 411 F. Supp. 2d 709 (E.D. Michigan, 2006). An employer cannot escape liability by setting up many layers of pro forma review. Courts may look for a nexus between the possibly neutral decision-maker and the biased motive of a lower level employee. Christian v. Wal-Mart Stored, Inc., 252 F.3d 862 (6th Cir. 2001). Bilak-Thompson argues that Lorenz and Brooks relied on Noble's information, and that Doss' audit is not independent.

[11] See Dollar Tree Store's statement of material facts not in dispute, Nos. 13 and 22; Bilak-Thompson's counter-statement of disputed facts, Nos. 13 and 22.

be terminated, I would have to correct the issue. There would be no other way for me to finalize.[12]

Likewise, in answer to the question, "[I]f you could not find any time clock worksheets, what would you do?," Bilak-Thompson answered:

> [W]e would always call the associate if we could get ahold of them ... If not, I would have to go by what is on the schedule, and the schedule gives them a start time, a finish time. If they worked over—if it was an eight-hour shift, they got a lunch. If it was a six-hour shift and they were a minor, they got a lunch, had to take a lunch.[13]

Moreover, regarding the payroll documents for the two weeks in November that were the subject of Doss' audit, Bilak-Thompson acknowledged that there were several time edits for which there were no time-worksheets, or signature of the employees.[14] Neither do the two employee affidavits presented by Bilak-Thompson refute Dollar Tree's assertion that she edited employee timecards without authorization. The employees state merely that they did not work all of the hours that they were originally scheduled to work and that they were paid for all of the hours they actually worked. Importantly, the employees do not state that Bilak-Thompson obtained their authorization to correct their time schedules.

Thompson attempts to refute her deposition testimony by stating in an affidavit that she "did not violate company policies and practices regarding editing associated time clock work sheets, " and that she "den[ies] improperly editing any of the store

---

[12] See Bilak-Thompson's deposition at pps. 64-65.

[13] See Bilak-Thompson's deposition at p. 68.

[14] See Bilak-Thompson's deposition at pps. 174-180.

15

associates time keeping records in November, 2004."[15]  This affidavit, however, was signed on August 11, 2006, nearly three months after her deposition was taken on May 15, 2006, and is insufficient to create a genuine issue of fact.  See Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir.1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.") Bilak-Thompson's argument is not that she did not edit employee time cards without first obtaining authorized time-worksheets from the affected employees, but that she edited the time cards to reflect the accurate amount of time worked.  Essentially, Bilak-Thompson is arguing that because her editing resulted in employees being paid the correct amount of money for the hours they actually worked, Dollar Tree did not have a legitimate reason for terminating her.  Bilak-Thompson carries the burden of establishing by a preponderance of the evidence that Dollar Tree's proffered reason for her termination had no basis in fact because she did not do the alleged action.  Bilak-Thompson has failed in this respect, and summary judgment is appropriate here.

---

[15] See Bilak-Thompson affidavit, ¶¶ 9-10.

## V.  CONCLUSION

For the above stated reasons, Dollar Tree's motion for summary judgment is GRANTED.

SO ORDERED.


Dated:  November 15, 2006          s/Avern Cohn
                                   AVERN COHN
                                   UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 15, 2006, by electronic and/or ordinary mail.


                                    s/Julie Owens
                                   Case Manager, (313) 234-5160